IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VINCENT J. SANCHEZ,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 24-CV-6884** |
| | : | |
| **BUTTERWORTH,** *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**BEETLESTONE, J.**                                                                                  **MARCH  18, 2025**

*Pro se* Plaintiff Vincent J. Sanchez, a pretrial detainee currently incarcerated at Berks County Jail ("BCJ"), commenced this *pro se* civil rights action by filing a Complaint pursuant to 42 U.S.C. § 1983.  (*See* ECF No. 1 ("Compl.").)  Named as Defendants are Operator Butterworth and Operator Rushin, both of whom are employed at BCJ.  (*Id.* at 2.)  Sanchez also designates "Unknown C.O.'s names while in Segregation" as Defendants.  (*Id.* at 3.)  He seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Sanchez leave to proceed *in forma pauperis* and permit him to proceed on his excessive force claims against Defendants Butterworth and Rushin.  The Court will dismiss all remaining claims, and Sanchez will be provided an opportunity to proceed on his excessive force claims at this time or file an amended complaint.

I.  **FACTUAL ALLEGATIONS**[1]

Sanchez alleges that Defendants Butterworth and Rushin used excessive force on him on July 15, 2024.[2]  (*Id.* at 5.)  Specifically, Sanchez avers that "one of the operators grabbed [his] arm" causing Sanchez to "tense" even though he "wasn't being resistful." (*Id.*)  The operator immediately reacted to Sanchez's tensing by "slamming [Sanchez's] head against the wall." (*Id.*)  Sanchez was placed in handcuffs and "both officers assisted each other in slamming [him] onto the ground face first on [his] stomach."  (*Id.* at 5-6.)  Sanchez was in shock and lightheaded. (*Id.* at 6.)  Both Defendants then placed their knees on his back and put a spit mask on him.  (*Id.*) While Sanchez was "still on [his] stomach handcuffed," one of the operators forced his body on Sanchez's ankles causing Sanchez to scream and "have a panic attack." (*Id.*)  Sanchez claims that this action caused "major pain to [his] ankle."  (*Id.*)

Sanchez was then transported to the D-Unit, which he identifies as the "Disciplinary Housing/Security Unit." (*Id.*)  Sanchez contends that there was "retaliation" during his confinement in the D-Unit.  (*Id.*)  He alleges that he was denied showers and "health and hygiene material," and he was served "three cold meals a day within a twelve to fifteen day span." (*Id.*) Sanchez wrote grievances and tried "to talk to the higher ups," but he was not permitted to talk to the "super deputy warden." (*Id.*)

---

[1] The factual allegations set forth in this Memorandum are taken from the Complaint.  (*See* ECF No. 1.)  Sanchez also attaches as exhibits copies of his grievances and appeals regarding the incident, along with the institutional responses, as well as a copy of a misconduct report.  (*See* ECF No. 1-1.)  The Court considers the entire submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.

[2] In the exhibits attached to his Complaint, Sanchez specifies that the individuals who allegedly used excessive on him are Butterworth and Rushin.  (ECF No. 1-1 at 3.)  This identification coincides with the allegations in the Complaint although Sanchez does not specifically identify them by name and instead refers to them as "operators."

Sanchez contends that because of the incident, he suffered injuries to his head and ankle. (*Id.* at 5.) He claims that he has a history of "traumatic brain injury" and his "ankle and head still have issues till this day." (*Id.*) He alleges that he is not receiving therapy for his ankle even though it "seems to have non-stop nerve damage." (*Id.*) Sanchez seeks $950,000 in monetary damages for his claims of excessive force, retaliation,[3] denial of hygiene care, and dietary punishment, *i.e.*, being served three cold meals a day. (*Id.*)

---

[3] A passing reference to a term such as "retaliation" without factual support is not sufficient to bring claims before a court. *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). Rather, to state a plausible First Amendment retaliation claim, Sanchez must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Sanchez avers that the "retaliation" began after he was taken to the D-Unit. (Compl. at 6.) He does not allege that he engaged in any constitutionally protected conduct, nor does he tie the allegations of retaliation to any of the named Defendants. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that, to allege a plausible claim, a plaintiff must assert that the defendant had personal involvement in a civil rights violation).

As noted, Sanchez attached copies of a misconduct report to the Complaint, but he does not mention the misconduct in the body of the Complaint or assert any claim based on the misconduct. To the extent he intended to so do by attaching the copy, the claim is not plausible because a plaintiff may not state a claim by relying solely on exhibits. *See Estate of Egenious Coles*, 658 F. App'x at 111 ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."); *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

## II. STANDARD OF REVIEW

The Court will grant Sanchez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this case.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint, liberally construed, contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Sanchez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other

---

[4] Because Sanchez is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

4

litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III. DISCUSSION

Sanchez asserts constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

#### A. Lack of Personal Involvement

Sanchez names "Unknown C.O.'s" as Defendants but asserts no allegations in the body of his Complaint about how any of these individuals were involved in the incidents he describes. For this reason, the claims against them are not plausible. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676

(explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Accordingly, the claims against "Unknown C.O.'s" will be dismissed; however, Sanchez will be permitted an opportunity to file an amended complaint to describe how these individuals were involved with his claims.[5]

### B.     Excessive Use of Force

Because Sanchez asserts that he was a pretrial detainee during the relevant event (*see* Compl. at 4), the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted). To state a due process violation based on excessive force, a pretrial detainee must allege plausibly "that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee "requires

---

[5] While naming Doe Defendants at this stage of the litigation is permissible (s*ee Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (use of John or Jane Doe defendants is permissible "until reasonable discovery permits the true defendants to be identified")), Sanchez must be careful to specify which unknown defendant he refers to in any given allegation so that each unknown person's role in the incident is clear. He may differentiate them by assigning each a number (*i.e.*, "John Doe #1, John Doe #2," etc.). Unless the Court has sufficient facts to infer that a given, specific Doe defendant has violated Sanchez's constitutional rights, they will be subject to dismissal in any amended complaint Sanchez choses to file.

'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397 & 399).

Sanchez alleges that Defendants Butterworth and Rushin slammed his head against the wall, placed him in handcuffs, and then "both officers assisted each other in slamming [Sanchez] onto the ground face first on [his] stomach." (Compl. at 5-6.) While Sanchez was "still on [his] stomach handcuffed," one of the operators forced his body on Sanchez's ankles causing Sanchez to scream and "have a panic attack." (*Id.*) Accepting Sanchez's factual allegations as true and drawing all reasonable inferences in his favor at this early stage of the proceedings, Sanchez has alleged a plausible Fourteenth Amendment excessive force claim against Defendants Butterworth and Rushin. *See Kingsley*, 576 U.S. at 396-397. Accordingly, Sanchez's excessive force claims against Butterworth and Rushin pass statutory screening and will proceed at this time.

    **C.**    **Conditions of Confinement**

Construing the Complaint liberally, it appears that Sanchez also seeks to present conditions of confinement claims based on his allegations that he was denied showers and served cold meals for approximately two weeks. (*See* Compl. at 5.) To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*,

495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (*abrogation on other grounds recognized by Fisher*, 115 F.4th 197) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."). Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Courts have held that the denial of showers for short periods does not constitute the type of serious deprivation that amounts to a constitutional violation. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (concluding that denial of showers for fifteen days did not violate the Eighth Amendment when the inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); *Coleman v. Hodges*, No. 18-1152, 2018 WL 6618459, at *8 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL

6618408 (W.D. Pa. Dec. 18, 2018) ("[B]eing denied a shower for four days does not constitute a serious enough deprivation of sufficient duration to establish a constitutional violation") (citing cases); *Barndt v. Wenerowicz*, No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd,* 698 F. App'x 673 (3d Cir. 2017) (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his cell); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 738 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail.  Even a two-week suspension of shower privileges does not constitute a denial of 'basic hygienic needs.'" (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003)).  Moreover, Sanchez's claim is not plausible as pled because he has not alleged how he was harmed by the alleged denial of showers.  See *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (concluding that whether the plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional).  Nor has he identified a named Defendant who was personally responsible for this alleged deprivation.

Sanchez also alleges that his rights were violated because he was continuously served cold food for a period of two weeks.  (Compl. at 5-6.)  However, being served cold food for this short period of time does not constitute the type of serious deprivation that amounts to a constitutional violation.  See *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) ("Being served cold meals for a 45-day period . . . is not 'punishment' under *Bell*.  So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . ."); *see also Parker v. Luryd*, No. 16-979, 2016 WL 7007480, at *2 (D. Del. Nov. 28, 2016) ("The issue of serving cold food has been considered and rejected by other

courts. The provision of cold food is not, by itself, a violation of the Eighth Amendment as long as the food is nutritionally adequate and is 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"). Sanchez does not allege that the food he was served was nutritionally inadequate, nor does he allege that it was unsafe to consume. Instead, Sanchez claims that his constitutional rights were violated merely because he was served cold meals. This does not amount to a constitutional violation. Further, Sanchez's claims fail because he has not adequately alleged how any of the named Defendants were personally responsible for the challenged conditions such that they could be held liable for the alleged violation of his rights. *See Rode*, 845 F.2d at 1207. Accordingly, Sanchez's claims based on the conditions of his confinement at BCJ will be dismissed without prejudice.

## IV.    CONCLUSION

As set forth more fully above, the Court is prepared to serve Sanchez's excessive force claims against Defendants Butterworth and Rushin. All other claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Considering Sanchez's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects identified by the Court.[6] In the alternative, Sanchez may advise the Court that

---

[6] If Sanchez chooses to file an amended complaint, the amended complaint must be a complete document that does not rely on the initial Complaint, or other papers filed in this case to state a claim. Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019). This means that the submission of an amended complaint in this case will "effectively constitute[] an abandonment of any prior complaints filed by [Sanchez]." *Smith*

he seeks to proceed only on the excessive force claims against Defendants Butterworth and Rushin, which pass statutory screening.  An appropriate Order follows.

                                       **BY THE COURT:**

                                       **S/ WENDY BEETLESTONE**

                                       **WENDY BEETLESTONE, J.**

---

*v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).